UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAYEH DOV,

                Petitioner,

-v-                                      CIVIL ACTION NO.: 21 Civ. 8570 (SLC)

WARDEN,                                 **OPINION & ORDER**

                Respondent.

**SARAH L. CAVE,** United States Magistrate Judge.

    Pro se petitioner Shayeh Dov ("Dov"), an inmate at Otisville Federal Correctional Institution ("FCI Otisville") serving an 87-month sentence following his 2019 guilty plea in the Southern District of Florida to conspiracy to commit wire fraud, has filed a third petition for a writ of habeas corpus under 28 U.S.C. § 2241 seeking release to home confinement (the "Third Petition"). (ECF No. 1 at 1–2, 12). On July 9, 2020, this Court denied Dov's first petition (the "First Petition") as procedurally and substantively deficient. Dov v. Bur. of Prisons, No. 20 Civ. 4343 (SLC), 2020 WL 3869107, at *3–6 (S.D.N.Y. July 9, 2020) ("Dov I"). On February 11, 2021, the Court denied Dov's similar second petition (the "Second Petition") on nearly identical grounds. See Dov v. Bureau of Prisons, No. 20 Civ. 9370 (SLC), 2021 WL 510154, at *3–6 (S.D.N.Y. Feb. 11, 2021) ("Dov II").

    Respondent Warden[1] ("Respondent"), represented by the United States Attorney's Office for the Southern District of New York (ECF Nos. 7, 16), opposes the Third Petition, arguing that it is barred by res judicata and fails on the merits. (ECF No. 8 (the "Opposition")). The parties have

---

[1] The Court presumes Dov intended to name the Warden of FCI Otisville.

consented to Magistrate Judge jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c). (ECF No. 14).

For the reasons discussed below, the Third Petition is DENIED.

## I. BACKGROUND

### A. Factual Background

The factual background, including Dov's medical history through November 2020, is set forth in detail in Dov I and Dov II and is incorporated by reference. See Dov I, 2020 WL 3869107, at *1–2; Dov II, 2021 WL 510154, at *1–2. The Third Petition includes 225 pages of medical records post-dating the Court's decision in Dov II (the "New Medical Records"). (See ECF Nos. 1 at 14–235; 15 at 5–7). The Court summarizes the New Medical Records that are relevant to this decision.

On April 7, 2021, Dov was examined by J. Louis Solis, M.D., at the Garnet Health Medical Center ("Garnet"), a private medical facility in Middletown, New York. (ECF No. 1 at 69, 218–21, 229–30). Dr. Solis performed a CT scan of Dov's abdomen and pelvis (the "April 2021 CT Scan"). (Id. at 229). Dr. Solis' notes reflect Dov's history of kidney stones and his stage-three kidney disease diagnosis. (Id.) The April 2021 CT Scan showed "an approximately 3 mm nodule in the right lower lobe" of Dov's left kidney that was "unchanged" compared to imaging taken on September 3, 2020 (the "Sept. 2020 CT Scan"). (Id.)[2] Dr. Solis also noted that "[a] 1.5 cm right adrenal adenoma [was] unchanged [from the Sept. 2020 CT Scan] given differences in caliper positioning." (Id.) Finally, Dr. Solis noted that "[s]evere atrophy of the left kidney [was] again seen." (Id.)

---

[2] The Court discussed the Sept. 2020 CT Scan in Dov II. See 2021 WL 510154, at *1.

The Bureau of Prisons ("BOP") scheduled Dov for consultations with urology, nephrology, cardiology, and endocrinology specialists outside of FCI Otisville on April 14 and April 22, 2021, but Dov refused to attend. (ECF No. 1 at 223–26).

On May 26, 2021, Jayne Vander Hey-Wright, a BOP Health Services physician assistant, signed an "Administrative Note" indicating that:

> [Dov] thought he was going to be released under Cares Act, however was denied [sic]. He refused all consultations based on belief of release. Would now like to be rescheduled for those consults as he will not be leaving early.

(ECF No. 1 at 54).

Later that same day, Dov injured his left ankle "when he got his [left] foot caught under a motorized pallet jack." (ECF No.1 at 28; see id. at 49). BOP medical personnel performed x-rays that revealed "a nondisplaced fracture of [his left] lateral malleolus." (Id. at 28). BOP staff recommended that Dov "see an outside provider for consultation and treatment," but Dov refused to be seen. (ECF No.1 at 28; see id. at 184).

On June 7, 2021, Dov "had [a] teleconference with Dr. Gupta," a nephrologist. (ECF No. 1 at 44). Dr. Gupta "was satisfied that [Dov's] kidney function is remaining somewhat stable." (ECF No. 1 at 44; see id. at 193–95). Dr. Gupta recommended that Dov "see the urologist" and schedule a follow-up consultation in three months. (Id. at 44).

On July 28, 2021, Dov received a COVID-19 vaccination administered by BOP medical staff. (ECF No. 1 at 125, 167).

The New Medical Records show that, on August 3, 2021, Dov "signed refusals for 3 upcoming outside medical consultations" recommended by BOP, specifically, nephrology, endocrinology, and urology specialists. (ECF No. 1 at 22; see id. at 164–66). On August 4, 2021,

Dov told Alphonso Linley, M.D., at the BOP health clinic that he refused to attend the appointments because doing so would have required him to quarantine during "the high holidays." (Id. at 162). On August 27, 2021, Dov advised Ms. Vander Hey-Wright that he "would like to be rescheduled for his consults since the policy now state[d] that since he has been vaccinated against COVID-19 he will not need to quarantine after an outside medical appontment [sic]." (Id. at 20).

On September 2, 2021, Dr. Lingley evaluated Dov. (ECF No. 1 at 14). Dov reported that he "feels fine." (Id.)

On March 7, 2022, BOP sent Dov for another CT scan of his abdomen and pelvis at Garnet (the "Mar. 2022 CT Scan"). (ECF No. 15 at 5). The Mar. 2022 CT Scan showed a "[r]ight middle lobe nodule measure 3.5 mm" and "a 2.6 mm right lower lobe nodule" that were "[b]oth . . . "stable when compared to the" Sept. 2020 CT Scan. (Id. at 6). Similarly, the Mar. 2022 CT Scan showed that "a right adrenal adenoma measuring 2 cm by 1.7 cm [was] unchanged." (Id.) Finally, the Mar. 2022 CT Scan showed that Dov's left kidney remained "atrophic" and that a "2.1 x. 2.1 cm complex cystic lesion [was] noted in the lower pole of the left kidney" that was "also unchanged when compared to the" Sept. 2020 CT Scan. (Id.)

### B. Procedural Background

#### 1. Criminal proceedings and home confinement request in sentencing court

On January 17, 2019, Dov was charged by criminal information in the United States District Court for the Southern District of Florida with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. (ECF No. 1 at 1–2; see United States v. Dov, 19 Cr. 60006 (WPD) (S.D. Fla. 2019) (the "Criminal Action"), ECF No. 1 (the "Information")). On February 7, 2019, Dov pled

guilty to the single charge in the Information.  (ECF No. 1 at 2; Criminal Action, ECF No. 15).  On February 20, 2019, the Honorable William J. Zloch accepted Dov's plea and, on August 6, 2019, sentenced Dov to an 87-month term of imprisonment followed by three years of supervised release.  (ECF No. 1 at 2; Criminal Action, ECF Nos. 19, 45).

On May 13, 2020, Dov filed with the Honorable William P. Dimitrouleas, to whom the Criminal Action had been reassigned, an emergency motion seeking home confinement. (ECF Nos. 1 at 2; 9-2 at 1; see Criminal Action, ECF Nos. 53, 56–58).  After considering the factors for compassionate release under 18 U.S.C. § 3582(c)(1)(A), Judge Dimitrouleas denied Dov's motion, noting that, although Dov had "numerous medical problems, [] he was still able to survive a COVID 19 infection."  (ECF No. 9-2 at 1).

2. **First Petition**

On June 8, 2020, Dov filed the First Petition, in which he asked the Court to transfer him to a medical facility or furlough for medical treatment.  Dov I, 2020 WL 3869107, at *2. On June 23, 2020, while the First Petition was pending, Dov filed a motion (the "Motion") to be "released to home confinement until his medical condition has stabilized," citing pain from his kidney condition that made him "unable to stand."  (Id.)

On July 9, 2020, the Court denied the First Petition and the Motion.  Dov I, 2020 WL 3869107.  The Court found that: (i) the BOP has sole discretion to designate Dov's place of confinement; (ii) while Dov may request that a court recommend home confinement under 18 U.S.C. § 3621(b) or grant compassionate release under 18 U.S.C. 3582(c), the proper forum for such requests is the <u>sentencing</u> court, not this Court; (iii) to the extent Dov sought a medical furlough, that too was within BOP's sole discretion, and Dov failed to allege that he had made, or

5

that BOP had denied, a furlough request; (iv) Dov was barred from seeking habeas relief under 28 U.S.C. § 2241 to challenge the conditions of his confinement because he had failed to exhaust his administrative remedies or to establish a basis to waive that requirement; and (v) even if the Court were to waive the exhaustion requirement, Dov's requested habeas relief failed on the merits because he did not establish that the BOP was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the U.S. Constitution. Id. at *3–6.

   3. **Second Petition**

On November 9, 2020, Dov filed the Second Petition. Dov II, 2021 WL 510154, at *1 n.2. Dov alleged that, although the Court in Dov I recommended that BOP consider him for release, BOP "has not approved a release" for him. Id. at *2. Accordingly, Dov asked the Court to "exercise its authority under 18 U.S.C. § 3621(b)(4)(B) to recommend to the BOP that [he] be re-designated to home confinement to serve the remainder of his sentence." Id.

On February 11, 2021, the Court denied the Second Petition. Dov II, 2021 WL 510154, at *1. The Court again found that: (i) the BOP has sole discretion to designate Dov's place of confinement; (ii) this Court is not the proper forum for Dov to request a recommendation of home confinement; (iii) Dov's failure to exhaust his administrative remedies, or to establish a basis to waive the exhaustion requirement, barred his requested habeas relief; and (iv) in any event, Dov's habeas request failed on the merits because still did not establish that the BOP was deliberately indifferent to his serious medical needs. Id. at *–5.

   4. **Third Petition**

On October 18, 2021, Dov filed the Third Petition. (ECF No. 1). On November 30, 2021, the Honorable Gregory H. Woods, to whom this case was then assigned, directed Respondent to

respond.  (ECF No. 5).  On January 31, 2022, Respondent filed the Opposition.  (ECF Nos. 8–9).  On February 12, 2022, the parties consented to Magistrate Judge jurisdiction for all purposes.  (ECF No. 14).  On March 28, 2022, Dov filed a reply.  (ECF No. 15 (the "Reply")).

## II. DISCUSSION

In the Third Petition, Dov asks the Court to direct the Warden "to transfer [him] to home confinement to serve the balance of his sentence" pursuant to the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act")).  (ECF No. 1 at 3); see Pub. L. No. 116-136 (2020)).  Dov alleges that the CARES Act "mandated a [prison] population reduction strategy at the BOP facilities by transferring qualified inmates to serve their sentences via home confinement."  (ECF No. 3 at 5).  Dov claims that he has "met all the [] requirements" under the CARES Act and that the BOP actually "processed [him] to be transferred to home confinement with a departure date of April 27, 2020" but never transferred him.  (Id. at 6).  Dov notes that he "is severely 'immuno-compromised' due to his type II diabetes and the fact that he has only one functioning kidney[,]" and he specifically "draws the Court's attention to" the Sept. 2020 CT Scan, which reflects "severe atrophy of the left kidney," a "1.3 cm right adrenal adenoma," and a "3 mm module in the right lower lobe."  (Id. at 9 (quoting id. at 237)).  Finally, Dov argues that he "has exhibited 'model behavior' as an inmate during his term of incarceration" and "qualifies under the [18 U.S.C. §] 3553(a) factors[.]"  (Id. at 4).[3]

In the Opposition, Respondent makes two arguments.  First, Respondent argues that the Third Petition is "barred by res judicata."  (ECF No. 8 at 3).  Second, Respondent argues that the

---

[3] 18 U.S.C. §] 3553(a) sets forth the factors a court shall considered in determining the sentence of a criminal defendant.

Third Petition "fails on the merits" because (i) "it is within BOP's sole discretion to designate [Dov's] place of imprisonment" and (ii) in any event, Dov "does not advance any arguments relating to allegedly inadequate medical care" at FCI Otisville. (Id. at 3–4).

The Court provides a brief overview of the CARES Act as it relates to this case before turning to a discussion of the Third Petition.

### A. The CARES Act

"On March 19, 2020, in response to the COVID-19 pandemic, Congress enacted the CARES Act," which "provide[d] that, 'if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the [BOP] may lengthen the maximum amount of time for which the [BOP] Director is authorized to place a prisoner in home confinement' under 18 U.S.C. § 3624(c)(2)." United States v. Ogarro, No. 18 Cr.373-9 (RJS), 2020 WL 1876300, at *5 (S.D.N.Y. Apr. 14, 2020) (quoting Pub. L. No. 116-136 (2020)).[4] The Attorney General subsequently made such a finding and, in memoranda dated March 26, 2020 and April 3, 2020 (the "Memoranda"), set forth a "non-exhaustive list of discretionary factors" for BOP facilities to use in "assessing which inmates should be granted home confinement." OFF. OF THE ATT'Y GEN., MEMO. FOR DIR. OF BUR. OF PRISONS: PRIORITIZATION OF HOME CONFINEMENT AS APPROPRIATE IN RESPONSE TO COVID-19 PANDEMIC (Mar. 26, 2020), available at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf; see OFF. OF THE ATT'Y GEN., MEMO. FOR DIR. OF BUR. OF PRISONS: INCREASING USE OF HOME CONFINEMENT AT INSTITUTIONS

---

[4] The BOP is authorized "to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2).

Most Affected by COVID-19 (Apr. 3, 2020), available at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf.

On November 16, 2020, the BOP issued internal guidance (the "Guidance") that, in addition to adopting the criteria in the Memoranda, prioritized for home confinement inmates who "have served 50% or more of their sentences" or who "have 18 months or less remaining in their sentences and have served 25 % or more of their sentences." Bur. of Prisons, Memo. For. Chief Exec. Officers: Home Confinement (Nov. 16, 2020), available at https://www.bop.gov/foia/docs/Updated_Home_Confinement_Guidance_20201116.pdf.

"Like a transfer to home release under section 3621(b), . . . the decision to grant a transfer to home confinement under the CARES Act is reserved to the discretion of BOP." Milchin v. Warden, No. 3:22-CV-195 (KAD), 2022 WL 1658836, at *2 (D. Conn. May 25, 2022) (citing U.S. v. Nnawuba, No. 18 Cr. 117-6 (KPF), 2022 WL 1322207, at *6 n.2 (S.D.N.Y. May 3, 2022) ("The decision to grant [a request for home confinement under the CARES Act] is reserved to the discretion of the BOP."); see Ogarro, 2020 WL 1876300, at *6 ("[T]he authority the CARES Act and the Attorney General have given to the BOP to permit prisoners to finish the remainder of their sentence in home confinement . . . [is] are exclusively within the discretion of the BOP; the Court lacks authority to order [such relief].").

B. **Abuse of the Writ**

Respondent argues that Dov's Third Petition "is barred by res judicata" because the Court "has already rejected [his] legal argument that BOP may be ordered to release him to home confinement." (ECF No. 8 at 3). In his Reply, Dov argues that he "only recently" became eligible

9

for home confinement under the CARES Act and, thus, he could not have raised his claim in his prior petitions. (ECF No. 15 at 2–3).

"Res judicata does not apply in the context of habeas petitions; instead, the 'abuse of the writ' doctrine serves as 'a substitute for res judicata' for subsequent habeas petitions." Graham v. Decker, No. 20 Civ. 3168 (PAE), 2020 WL 3317728, at *3 (S.D.N.Y. June 18, 2020), (quoting Muniz v. United States, 236 F.3d 122, 126 (2d Cir. 2001)). "Under the common law 'abuse of the writ' doctrine, a court need not entertain a petition that abuses the habeas process." Esposito v. Ashcroft, 392 F.3d 549, 550 (2d Cir. 2004). "One frequently recognized indicator of abusiveness is whether the petitioner could have asserted his present claims in his prior petition." Id. (collecting cases). "Depending on the circumstances, the repetition of a previously asserted claim can be at least as abusive as raising new claims that could have been pursued in a prior petition." Id.; see Graham, 2020 WL 3317728, at *3 (noting that the doctrine applies to petitions "that raise the same claims as the previous petition") (citing Garcia v. Dep't of Homeland Sec., 422 F. App'x 7, 7 (2d Cir. 2011)). "In addition, . . . because habeas corpus is equitable in nature, the petitioner's own conduct can have a significant bearing on whether abuse is found." Esposito, 392 F.3d at 550 (citing McCleskey v. Zant, 499 U.S. 467, 484–85 (1991)).

The Court finds that the Third Petition "is merely a 'repetition of a previously asserted claim'" and, thus, constitutes an abuse of the writ. Jones v. Caputo, No. 22 Civ. 2041 (LTS), 2022 WL 1062886, at *2 (S.D.N.Y. Apr. 4, 2022) (quoting Esposito, 392 F.3d at 550). This is clear from the first paragraph on the first page of the Third Petition, in which Dov asks the Court to direct the BOP "to transfer [him] to home confinement to serve the balance of his sentence." (ECF No. 1 at 1). This request presents precisely the same legal issue that the Court has now

10

twice resolved against Dov, i.e., that, "under 18 U.S.C. § 3621(b)(4)(B), the BOP has the sole discretion to designate his place of confinement." Dov I, 2020 WL 3869107, at *3; see Dov II, 2021 WL 510154, at *2. Dov "does not presently argue any change of facts or circumstances, or identify any new or relevant intervening changes in the law which would warrant this Court considering his claim anew." Alsop v. Warden, No. 9:18-CV-1233 (GTS), 2019 WL 3975655, at *4 (N.D.N.Y. Aug. 22, 2019) (invoking abuse of the writ doctrine to dismiss a "habeas petition [that] recycle[d] the same arguments . . . as those which were previously decided"); see Agoro v. United States, No. 11 Civ. 1818 SAS, 2011 WL 1330771, at *3 (S.D.N.Y. Apr. 4, 2011) (concluding that a habeas petition "constitute[d] abuse of the writ because [the] petitioner [brought] identical claims immediately after the Court's dismissal of his [prior] claim"); Williams v. United States, No. 02 Civ. 5324, 2002 WL 31496225, at *1 (S.D.N.Y. Nov. 8, 2002) (noting that the court may decline to reconsider on the merits a "successive petition raising precisely the same claim previously rejected unless the interests of justice so require"). Dov did not appeal either Dov I or Dov II, but instead has filed the Third Petition seeking effectively identical relief. The Third Petition, therefore, "is essentially an attempt to get another bite at the apple." Agoro, 2011 WL 1330771, at *3. Considering Dov's conduct despite the Court's unambiguous prior rulings, the Court finds that the Third Petition constitutes an abuse of the writ. See Esposito, 392 F.3d at 550.

Dov's attempt to re-cast the Third Petition as one under the CARES Act is unavailing. As an initial matter, the Court notes that Dov invoked the CARES Act in the First Petition, citing heavily from—and even attaching—the Memoranda, and imploring the Court to "act with urgency in effectuating the transfer of inmates out of BOP custody and into home confinement" in accordance with the Attorney General's directive. (Dov v. United States, 20 Civ. 4343 (SLC)

(S.D.N.Y. June 17, 2020), ECF No. 7 at 6–8, 17–23). In any event, while Dov claims that he "only recently" became eligible for home confinement under the CARES Act pursuant to the discretionary prioritization factors set forth in the Memoranda and the Guidance (ECF No. 15 at 2–3), this argument ignores the fundamental flaw of the First, Second, and Third Petitions, i.e., that, regardless of his eligibility for transfer to home confinement, the Court lacks the authority to order this relief. See Ogarro, 2020 WL 1876300, at *6. In other words, the Third Petition "fail[s] for the same reasons articulated in the Court's" rulings in Dov I and Dov II. Agoro, 2011 WL 1330771, at *3.

Accordingly, because the Third Petition constitutes an abuse of the writ, it is DENIED.

**C. Home Confinement Under the CARES Act**

Although it finds that the Third Petition constitutes an abuse of the writ, for completeness, the Court addresses the merits of the Third Petition. Dov asks the Court "to direct [Respondent] to transfer [him] to home confinement to serve the balance of his sentence." (ECF No. 1 at 1). As Respondent correctly argues, however, under 18 U.S.C. § 3621(b)(4)(B), the BOP has the sole discretion to designate Dov's place of confinement. (ECF No. 8 at 3 (citing United States v. Venkataram, No. 06 Cr. 102 (JPO), 2016 WL 11448569, at *2 (S.D.N.Y. Dec. 12, 2016))). The factors that the BOP considers in making that designation include statements "by the court that imposed the sentence." 18 U.S.C. § 3621(b)(4). Here, Judge Dimitrouleas, in denying Dov's application for the same relief he seeks here, stated:

> [Dov] is 50 years old and has served only a tiny fraction of his (87) month sentence. He has numerous medical problems, but he was still able to survive a COVID 19 infection. The Court does not find that there are extraordinary and compelling reasons to warrant any relief. Such relief would not promote respect for the law or act as a deterrent.

(ECF No. 9-2 at 1). Since this Court's decisions in Dov I and Dov II, Dov has not renewed his request to Judge Dimitrouleas.

As we have repeatedly explained, this Court is not the proper forum for Dov to request a recommendation to be designated for home confinement, and his request to the proper forum—the sentencing court—has been denied. See Dov II, 2021 WL 510154, at *2; Dov I, 2020 WL 3869107, at *3. (See also ECF No. 9-2). Dov's reliance on the CARES Act as the basis for his latest request does not alter the Court's conclusion. (ECF No. 1 at 3). As discussed above (see § II.A, supra), "the authority the CARES Act and the Attorney General have given to the BOP to permit prisoners to finish the remainder of their sentence in home confinement . . . [is] exclusively within the discretion of the BOP; the Court lacks authority to order [such relief]." Ogarro, 2020 WL 1876300, at *6; see United States v. Ayala, No. 17 Cr. 618 (RA), 2020 WL 4586260, at *1 (S.D.N.Y. Aug. 10, 2020); United States v. Bido, No. 14 Cr. 212 (RJS), 2020 WL 2765689, at *1 (S.D.N.Y. May 28, 2020).

Accordingly, Dov's request that this Court direct the BOP to transfer him to home confinement is DENIED. To the extent Dov seeks a recommendation to BOP to place him in home confinement, he must pose that request to Judge Dimitrouleas. (See ECF No. 8 at 3 ("To the extent [Dov] believes that circumstances have changed, then he should direct his request to the sentencing court.")).

### D. Habeas Corpus Relief

As a federal inmate, Dov may challenge the conditions of his confinement by a petition for a writ of habeas corpus under 28 U.S.C. § 2241. See Dhinsa v. Krueger, 917 F.3d 70, 81 (2d Cir. 2019); Lagan v. Edge, No. 20 Civ. 2221 (AMD), 2020 WL 3403109, at *3 (E.D.N.Y. June 19,

2020).  "This includes challenges to the dangerous conditions caused by the COVID-19 pandemic."  Lagan, 2020 WL 3403109, at *3; see Basank v. Decker, No. 20 Civ. 2518 (AT), 2020 WL 1953847, at *8 (S.D.N.Y. Apr. 23, 2020) ("An application for habeas corpus under 28 U.S.C. § 2241 is the appropriate vehicle for an inmate in federal custody to challenge conditions or actions that pose a threat to his medical wellbeing."); United States v. Credidio, No. 19 Cr. 111, 2020 WL 1644010, at *2 (S.D.N.Y. Apr. 2, 2020).

Although not codified in Section 2241, the Second Circuit has "held that federal prisoners must exhaust their administrative remedies" before seeking relief.  See Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001); Gordon v. Lappin, No. 07 Civ. 10948, 2008 WL 4179233, at *2 (S.D.N.Y. Sept. 10, 2008).  "This requires compliance with the BOP's four-step Administrative Remedy Program."  Lallave v. Martinez, No. 22-CV-791 (NGG) (RLM), 2022 WL 2338896, at *8 (E.D.N.Y. June 29, 2022) (citing 28 C.F.R. § 542.10(a)).  As the Court explained in Lallave:

> First, the inmate must attempt to informally resolve the issue with prison staff. If this is unsuccessful, the second step is to file a Request for Administrative Remedy form with the prison warden. If the request is denied or the Warden fails to respond within 20 days, the third step is to appeal to the BOP Regional Director. If the appeal is denied or the Regional Director fails to respond within 30 days, the prisoner may appeal to the BOP General Counsel. Once the General Counsel denies the claim or fails to respond within 40 days, the claim is considered administratively exhausted.

Id. at *8 (citing 28 C.F.R. §§ 542.13–18).

Because exhaustion is not a statutory requirement, a prisoner may seek a waiver of the exhaustion requirement by demonstrating cause and prejudice if "legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies." Carmona, 243 F.3d at 634; see Atkinson v. Linaweaver, No. 13 Civ. 2790 (JMF), 2013 WL 5477576,

at *1 (S.D.N.Y. Oct. 2, 2013). Where a delay poses a serious threat to the inmate's health and safety, the court may waive the exhaustion requirement. See Washington v. Barr, 925 F.3d 109, 119 (2d Cir. 2019) (explaining that "an unreasonable or indefinite timeframe for administrative action" may constitute sufficient prejudice to justify waiver of exhaustion requirement) (internal citation omitted); United States v. Perez, No. 17 Cr. 513-3 (AT), 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020) (waiving exhaustion requirement where awaiting exhaustion of administrative process would be "futile and inadequate").

There is no evidence in the current record establishing that Dov has exhausted his BOP administrative remedies. While the Court repeats its desire for Dov to receive proper medical treatment, the Court also finds that the proper avenue to ensure that occurs is for Dov to follow the designated administrative procedures at FCI Otisville, which is responsible for his care. See United States v. Needham, No. 06 Cr. 911, 2020 WL 2512105, at *3 (S.D.N.Y. May 15, 2020) ("decisions regarding the adoption and execution of internal policies, including the discipline, care, and security of prisoners, ordinarily lie within the province and professional expertise of corrections officials") (internal citation omitted); United States v. Goldman, No. 97 Cr. 81, 1998 WL 906662, at *1 (S.D.N.Y. Dec. 29, 1998) ("The question of appropriate medical care for a prisoner is entrusted to the judgment of the [BOP]. This court does not have the jurisdiction to enter the type of order the defendant seeks."); see also Credidio, 2020 WL 1644010, at *2 (noting petitioner's failure to exhaust and absence of grounds to excuse for cause); Harrison v. Terrel, No. 11 Civ. 3974 (DLI), 2012 WL 3780328, at *2 (E.D.N.Y. Aug. 31, 2012) (dismissing section 2241 petition alleging deliberate indifference to medical needs for failure to exhaust). On the record before the Court, Dov has not shown that he exhausted the BOP's administrative process, nor

demonstrated cause and prejudice for not doing so.  Finally, consistent with the medical records previously submitted to the Court, Dov's New Medical Records indicate that BOP's medical staff are monitoring his kidney and diabetes conditions.  (ECF Nos. 1 at 14–235).  Accordingly, the Court finds that "there is no justification for circumventing the BOP and its authority to determine the appropriate place for incarceration."  Lagan, 2020 WL 3403109, at *4; see Needham, 2020 WL 2512105, at *3 ("declin[ing] to disturb [the] BOP's decisions regarding [petitioner's] medical treatment").

Finally, as with the First and Second Petitions, the Court finds that, even if it were to waive the exhaustion requirement, the Third Petition fails on the merits.  To establish a claim that he has been subjected to cruel and unusual punishment in violation of the Eighth Amendment, Dov must prove that his deprivation is "sufficiently serious," and that the BOP has demonstrated "deliberate indifference" to his medical needs.  Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference "follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment."  Id. (internal citation omitted).  This inquiry assesses whether there is both "objective evidence that the petitioner is at serious risk of harm, and subjective evidence that prison officials demonstrated a 'conscious disregard' of the petitioner's medical needs."  Lagan, 2020 WL 3403109, at *3 (quoting Farmer, 511 U.S. at 834). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law."  See Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006).

As an initial matter, while Dov alleges in his Reply that his "health concerns have grown more serious" since the Court's decision in Dov I (ECF No. 15 at 1), he has not submitted any evidence to support this claim.  To the contrary, Dov cites to records concerning the Mar. 2022

CT Scan, which reflect that his left kidney condition, while still atrophic, has remained "stable" and "unchanged" since the Sept. 2020 CT Scan, which pre-dated the Court's decision in Dov II. (Id. at 6).

Nonetheless, the Court continues to credit Dov's assertions about the advanced stage of his kidney condition as sufficient to satisfy the objective element of his claim. See Dov II, 2021 WL 510154, at *4 (citing Candelaria v. St. Agnes Hosp., No. 01 Civ. 8594 (LTS) (RLE), 2010 WL 1221874, at *5 (S.D.N.Y. Mar. 29, 2010) (finding loss of kidney function to be "sufficiently serious to satisfy the objective element of the deliberate indifference claim"). The Court finds again, however, that Dov has not established that the BOP has been deliberately indifferent to his serious medical needs. The New Medical Records demonstrate that Dov continues to regularly visit the BOP medical clinic for his pre-existing medical conditions, correspond with medical officers about those conditions, and visit outside providers as necessary. (ECF No. 1 at 14–235). Indeed, the BOP attempted to arrange for Dov to visit various outside treatment providers, but Dov refused. (Id. at 22, 28, 164–66, 184, 223–26). Dov has not identified any document in his New Medical Records indicating that the BOP's officials "were aware of facts that made the potentially harmful nature of their treatment so obvious that they 'must have known' of the risk that such treatment presented." Candelaria, 2010 WL 122874, at *6. The medical observation and treatment set forth in the New Medical Records fail to show that the BOP has been deliberately indifferent to Dov's medical needs; to the contrary, those records demonstrate that the BOP medical officers are closely monitoring and treating his conditions, which is the opposite of the conscious disregard required for an Eighth Amendment claim. See Jimenez v. United States, No. 11 Civ. 4593 (RJS), 2013 WL 1455267, at *7 (S.D.N.Y. Mar. 25, 2013) (finding that

prisoner who received medical attention on four occasions, including two consultations with a physician and medications, failed to demonstrate deliberate indifference).

At most, Dov's arguments in the Third Petition amount to a difference of opinion as to how to treat his medical conditions, which, as the Court has already explained, is insufficient to establish a violation of the Eighth Amendment.  See Roice v. Cty. of Fulton, 803 F. App'x 429, 432 (2d Cir. 2020) (finding that deliberate indifference claim based on differences of opinion over medical treatment failed to state claim); Ward v. Coley, No. 18 Civ. 2382 (KMK), 2019 WL 977887, at *6 (S.D.N.Y. Feb. 28, 2019) (finding that "mere disagreement over the proper treatment" failed to state deliberate indifference claim); Rivera v. Doe, No. 16 Civ. 8809 (PAE) (BCM), 2018 WL 1449538, at *11 (S.D.N.Y. Feb. 26, 2018) ("prisoner's belief that he should have received more or different treatment (including referral to a specialist) is not, without more, sufficient to state a constitutional claim"), adopted by, 2018 WL 1441386 (S.D.N.Y. Mar. 22, 2018); Jiminez, 2013 WL 1455267, at *7 (noting that "'mere disagreement over the proper treatment does not create a constitutional claim'") (quoting Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998)).

Accordingly, Dov's application for habeas corpus relief under Section 2241 is DENIED.

### E. Leave to Amend

"District courts generally grant a pro se petitioner an opportunity to amend a pleading to cure its defects, but leave to amend is not required where it would be futile."  Jones, 2022 WL 1062886, at *3 (citing Hill v. Curcione, 657 F.3d 116, 123–24 (2d Cir. 2011)).  Because Dov does not—and cannot—cite any authority suggesting the Court has jurisdiction to grant his request for an order of home confinement, nor has he exhausted administrative remedies, the Court declines to grant him leave to amend.  Id.

### III. **CONCLUSION**

For the reasons set forth above, the Third Petition is DENIED. The Clerk of the Court is respectfully directed to close this case, and to mail a copy of this Opinion and Order to Dov.

Dated: New York, New York
December 16, 2022

SO ORDERED.

_____
**SARAH L. CAVE**
**United States Magistrate Judge**